DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, Suite 800
Los Angeles, California 90067-6035
Telephone:    +1 310 553 6700
Facsimile:    +1 310 246 6779

JONATHAN D. HACKER (*pro hac vice*)
jhacker@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC 20006
Telephone:    +1 202 383 5300
Facsimile:    +1 202 383 5414

*Attorneys for Plaintiffs TikTok Inc. and*
*TikTok USDS Joint Venture LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| TIKTOK INC.; TIKTOK USDS JOINT VENTURE LLC,<br><br>                 Plaintiffs,<br><br>     v.<br><br>ROB BONTA, in his official capacity as Attorney General of California,<br><br>                 Defendant. | Case No. 5:25-cv-9789-EJD<br><br>**PLAINTIFFS' MOTION FOR INJUNCTION PENDING APPEAL**<br><br>Date:  TBD<br>Time:  TBD<br>Place:  San Jose Courthouse,<br>       Courtroom 4 – 5th Floor<br>       280 South 1st Street<br>       San Jose, CA 95113 |

# TABLE OF CONTENTS

**Page(s)**

NOTICE OF MOTION AND RELIEF SOUGHT........................................................................... 1

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ............................................................................................................................... 3

    A.    TikTok Is Likely To Succeed On The Merits Because The Order Conflicts With Controlling Ninth Circuit And Supreme Court Precedent ............................ 4

    B.    TikTok Will Face Irreparable Injury Absent An Injunction ................................. 10

    C.    The Interests of Users, Creators, And The Broader Public In Avoiding A Wrongful Restriction Of Speech On These Important Communication Platforms Outweigh The State's Interest In Immediate Enforcement .................. 11

CONCLUSION ......................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All. for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011)...................................................................................................... 11

*Am. Beverage Ass'n v. City & Cnty. of S. F.*,
2016 WL 9184999 (N.D. Cal. June 7, 2016) ............................................................................... 3

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
559 F.3d 1046 (9th Cir. 2009)..................................................................................................... 10

*American Broadcasting Cos. v. Aereo, Inc.*,
573 U.S. 431 (2014)................................................................................................................... 8, 9

*Cinevision Corp. v. City of Burbank*,
745 F.2d 560 (9th Cir. 1984)...................................................................................................... 2, 6

*Cmty. House, Inc. v. City of Boise*,
490 F.3d 1041 (9th Cir. 2007)..................................................................................................... 11

*Doe v. Harris*,
772 F.3d 563 (9th Cir. 2014)....................................................................................................... 11

*Elrod v. Burns*,
427 U.S. 347 (1976)..................................................................................................................... 10

*Feldman v. Ariz. Sec'y of State's Office*,
843 F.3d 366 (9th Cir. 2016)......................................................................................................... 3

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.*,
515 U.S. 557 (1995).............................................................................................................. 2, 8, 10

*Klein v. City of San Clemente*,
584 F.3d 1196 (9th Cir. 2009)..................................................................................................... 10

*MediNatura, Inc. v. Food & Drug Admin.*,
2021 WL 1025835 (D.D.C. Mar. 16, 2021).................................................................................. 3

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) ............................................................................................................. passim

*NetChoice v. Bonta* (*"NetChoice I"*),
761 F. Supp. 3d 1202 (N.D. Cal. 2024) .................................................................................... 4, 5

*NetChoice v. Bonta* ("*NetChoice II*"),
761 F. Supp. 3d 1232 (N.D. Cal. 2025) ................................................................................. passim

*NetChoice, LLC v. Bonta* ("*NetChoice III*"),
152 F.4th 1002 (9th Cir. 2025)............................................................................................... 2, 4, 5

*Philip Morris USA Inc. v. Scott*,
561 U.S. 1301 (2010).................................................................................................................... 10

PLS.' MOT. FOR INJUNCTION PENDING
APPEAL
Case No. 5:25-CV-9789-EJD

# TABLE OF AUTHORITIES

**Page(s)**

*Protect Our Water v. Flowers*,
377 F. Supp. 2d 882 (E.D. Cal. 2004)......................................................................... 3

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
944 F.2d 597 (9th Cir. 1991)................................................................................... 10

*Stanley v. Georgia*,
394 U.S. 557 (1969)................................................................................................ 12

*Turner Broad. Sys., Inc. v. FCC*,
512 U.S. 622 (1994).................................................................................................. 9

**Statutes**

Cal. Health & Safety Code § 27001(a) ........................................................................ 1

Cal. Health & Safety Code § 27002(b)(2) ................................................................... 1

Cal. Health & Safety Code § 27002(b)(4) ................................................................... 1

**Rules**

Fed. R. App. P. 8 ......................................................................................................... 1

Fed. R. Civ. P. 62(d) ................................................................................................... 1

**NOTICE OF MOTION AND RELIEF SOUGHT**

Plaintiffs TikTok Inc. and TikTok USDS Joint Venture LLC (collectively, "TikTok") will submit an amended notice of motion setting forth the date and time for hearing if one is set by the Court.

TikTok has appealed this Court's Order denying Plaintiffs' Motion for Preliminary Injunction, ECF No. 106. TikTok now moves this Court for an injunction pending appeal to prohibit the State from enforcing the challenged personalized feed provisions of SB 976, Cal. Health & Safety Code §§ 27001(a), 27002(b)(2), 27002(b)(4), against TikTok while TikTok continues its constitutional challenge to those provisions before the Ninth Circuit. *See* Fed. R. Civ. P. 62(d); Fed. R. App. P. 8.

TikTok intends to move for an injunction pending appeal in the U.S. Court of Appeals for the Ninth Circuit if this Court does not rule before close of business on August 18, 2026. Given the expedited schedule for preliminary injunction appeals in the Ninth Circuit, expedited relief is necessary to ensure the Ninth Circuit has sufficient time to rule.

**STATEMENT OF THE ISSUE**

Whether this Court should enjoin enforcement of SB 976's personalized feed provisions pending TikTok's appeal from the Order denying TikTok's motion for a preliminary injunction.

**INTRODUCTION**

The public significance of the issues presented by SB 976 and the equities involved strongly justify an injunction that maintains the pre-enforcement status quo while this case proceeds on appeal. The Order represents a significant departure from controlling First Amendment authority, with exceedingly broad implications. It does not uphold SB 976's regulation of online platforms' speech compilations as a finely-tuned limitation on uniquely dangerous speech the State has a demonstrably compelling interest in restricting. That holding would be wrong, too, but the Order goes much further. It holds that platforms do not engage in "expression" *at all* when they generate feeds by considering a user's viewing history and other information to make algorithmic predictions about the kind of content the user is likely to find interesting. The Order's analysis thus extends well beyond Plaintiffs here and even beyond SB 976 itself. Under the Order's legal analysis, *any*

publisher's choice to make algorithmic recommendations based even in part on user interests is not "expressive" and thus falls completely outside the First Amendment's scope. By the Order's lights, the state or federal government could prohibit the New York Times from recommending news stories to viewers based on their expressed news interests. Government agents could investigate and sanction Spotify for recommending playlists to listeners based on their past selections.

It is, in short, an extraordinary holding to conclude that a publisher makes no protected expressive choice when it elects to curate speech content based on likely user interests identified through algorithmic modelling. As TikTok will show on appeal—and as summarized below, *infra* at 4-10, that holding conflicts directly with many precedents of the Ninth Circuit and the U.S. Supreme Court, including the recent precedent that led directly to this litigation, *NetChoice, LLC v. Bonta* ("*NetChoice III*"), 152 F.4th 1002 (9th Cir. 2025), earlier precedent in *Cinevision Corporation v. City of Burbank*, 745 F.2d 560 (9th Cir. 1984), and Supreme Court precedents on speech compilations in *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024), and *Hurley v. Irish-American Gay, Lesbian & Bisexual Group*, 515 U.S. 557 (1995). But as this Court and others have recognized, the Court need not agree with TikTok's assessment of its appellate prospects to issue an injunction pending appeal—it is enough that a case presents novel and difficult legal issues with broad public significance. This challenge to SB 976's personalized feed provisions certainly satisfies that standard, as this Court itself recognized in enjoining enforcement of SB 976 pending appeal in *NetChoice v. Bonta* ("*NetChoice II*"), 761 F. Supp. 3d 1232 (N.D. Cal. 2025).

Counsel for TikTok has conferred with the State about whether the State would agree to stay enforcement of SB 976's personalized feed provisions against TikTok while TikTok pursued appellate review of this Court's order. Counsel for the State declined to agree to a stay of enforcement, and so TikTok is at imminent risk of enforcement and irreparable harm absent an injunction pending appeal. For essentially the same reasons the Court granted such relief in *NetChoice II*, the Court should grant this Motion and give the Ninth Circuit the opportunity to consider these important questions before SB 976 is implemented.

**ARGUMENT**

"[C]ourts evaluate injunctions pending appeal using a standard that is 'similar' to the one for preliminary injunctions, not one that is identical." *NetChoice II*, 761 F. Supp. 3d at 1235 (quoting *Feldman v. Ariz. Sec'y of State's Office*, 843 F.3d 366, 367 (9th Cir. 2016)). The standard relevant here is "more flexible than a rigid application of the traditional four-part standard," and, as a practical matter, factors other than likelihood of appellate success must weigh more strongly, because a court obviously believes in the merits of its own order. *Id.* (quoting *MediNatura, Inc. v. Food & Drug Admin.*, 2021 WL 1025835, at *6 (D.D.C. Mar. 16, 2021)). A court thus may issue an injunction pending appeal even when it "believe[s] its analysis in denying preliminary injunctive relief is correct," when, for example, a case "chart[s] a new and unexplored ground" and involves "difficult legal question[s], and when the equities of the case suggest that the status quo should be maintained." *Id.* at 1235-36 (quoting *Protect Our Water v. Flowers*, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004); *Am. Beverage Ass'n v. City & Cnty. of S. F.*, 2016 WL 9184999, at *2 (N.D. Cal. June 7, 2016)).

This case satisfies those standards. As the Court observed in issuing an injunction pending appeal in *NetChoice II*, SB 976 raises "novel, difficult, and important" issues, "especially the law's personalized feed provisions." *NetChoice II*, 761 F. Supp. 3d at 1236. Their resolution will have significant consequences for the many millions of Californians who rely on platforms like TikTok, which have "democratized the type of information shared through [the] content creation process, allowing people from all walks of life to share their talents with the world on the internet," and have become "among the most prominent places for people to connect with each other, exchange views, learn, and much more." Order at 1-2. An injunction pending appeal is therefore "appropriate to allow the opportunity for appellate review of these weighty issues." *NetChoice II*, 761 F. Supp. 3d at 1236; *see Am. Beverage Ass'n*, 2016 WL 9184999, at *2 (injunction pending appeal granted even where "Court believes it correctly decided the issues presented" given "plausible argument that there are serious questions on the merits and irreparable injury").

The traditional factors confirm that conclusion. TikTok is likely to succeed on the merits of its appeal because the Order conflicts with multiple Ninth Circuit and U.S. Supreme Court

decisions by holding that TikTok does not make expressive decisions when it employs algorithmic modelling to generate feeds that, in TikTok's judgment, convey its intended message about the content of those feeds. And if the prohibition on personalized feeds is invalidated on appeal, TikTok, its users and creators, and the broader public all will have suffered significant irreparable injuries from the wrongful restriction of such a prominent and socially valuable communications medium.

**A.    TikTok Is Likely To Succeed On The Merits Because The Order Conflicts With Controlling Ninth Circuit And Supreme Court Precedent**

As discussed at the outset, the Court may grant a motion for an injunction pending appeal even while believing the movant is unlikely to succeed on the merits. *See NetChoice II*, 761 F. Supp. 3d at 1235-36. TikTok submits, however, that the Ninth Circuit is likely to find that the Order directly conflicts with controlling precedent, including multiple decisions of both the Ninth Circuit and the U.S. Supreme Court.

*First*, the Order contravenes *NetChoice III*, the Ninth Circuit's precursor decision to this case. In *NetChoice III*, the Ninth Circuit affirmed a decision of this Court establishing an intelligible standard for determining when an online platform's use of an algorithm to generate speech compilations constitutes an "expressive" act under *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024), and other precedents, *see NetChoice v. Bonta* (*"NetChoice I"*), 761 F. Supp. 3d 1202, 1222 (N.D. Cal. 2024). *NetChoice III*, 152 F.4th at 1013-14. According to this Court's *NetChoice I* decision, an algorithm is likely expressive when humans create and control it to convey a message that the user is likely to find the content in the compilation interesting. *See* 761 F. Supp. 3d at 1222. As the Court explained, if "a human designs an algorithm for the purpose of recommending interesting posts on a personalized feed, the feed probably does reflect a message that users receiving recommended posts are likely to find those posts interesting." *Id.* In that situation, the Court recognized, the algorithm "simply acts as a tool to implement a conscious human choice" about how best to identify content the user will find interesting. *Id.* The Ninth Circuit agreed, recognizing that the "more an algorithm implements human editorial decisions, the more likely it is to be expressive," because an algorithm written and managed by humans to "promote[] a

platform's own message to users" is comparable to "traditional media curated by human editors." *NetChoice III*, 152 F.4th at 1014. The Ninth Circuit further agreed with this Court that platform-specific evidence was needed to determine whether a particular algorithm was, in fact, designed and managed to convey the platform's expressive message that "users receiving recommended posts are likely to find those posts interesting." *NetChoice I*, 761 F. Supp. 2d at 1221-23; *see NetChoice III*, 152 F.4th at 1014 (affirming this Court's ruling that "it needed more information—and the participation of individual members—to adjudicate NetChoice's 'fact intensive' claims about all of its members' algorithms").

TikTok has now provided the platform-specific evidence mandated by *NetChoice I and III*. Having reviewed that evidence, the Court now *agrees* that, as a factual matter, TikTok's algorithm implements its "message that 'this content is consistent with our values and we think you will find it informative and/or entertaining.'" Order at 8 (quoting TikTok Reply 6-7, ECF No. 68). On a straightforward application of the *NetChoice* decisions, that finding should compel the legal conclusion that the algorithm operates to convey the platform's own expressive message about the content of the compilations it generates. But rather than apply the *NetChoice* standard, the Order breaks from *NetChoice* and concludes that a platform's message about likely user interest in a feed's content *is not expressive at all*, when the platform uses an algorithm to generate the feed. That is, whereas this Court and the Ninth Circuit explicitly recognized in *NetChoice* that a message "you are likely to find these posts interesting" remains expressive when humans employ an algorithm in selecting videos to implement it, the Court's Order denying preliminary relief reaches the diametrically opposite legal conclusion: a platform's decision that "feeds should show content that 'will be interesting' to users" based on algorithmically-assessed factors such as viewing history or location is a decision "devoid of expressive judgment." Order at 17. Thus, despite *NetChoice*, the Order concludes that even if humans write, manage, and revise an algorithm to ensure that it recommends the kind of "likely interesting" content the humans want to recommend, the use of "algorithms' number-crunching capabilities is not an expressive judgment" because humans *themselves* "are not making any decisions about what content will be 'interesting,'" but instead "are merely relying on predictive modelling to assess what users' characteristics and history on the

platform suggest will keep these same users engaged." *Id.* at 8. "Otherwise stated, Plaintiffs decide to convey to users _____ because we think whatever fills in that blank is interesting, relevant or trustworthy . . . but [Plaintiffs are] not filling in that blank." *Id.* at 9 (quotation omitted). Even though humans at TikTok set the criteria by which the blanks are filled in, it is only the actual "filling in of the blank, what you're actually choosing to convey or not convey," that the Order recognizes as a protected "exercise of editorial judgment.'" *Id.*

In short, while the fact that humans write and manage an algorithm to convey the platform's message that "you are likely to find these posts interesting" is *decisive* under *NetChoice I and III*, such human control is *irrelevant* under the Order:  "[T]he degree of human involvement at various points of the process does not transform a message that is not expressive at the outset into one that is." Order at 9.  The Order's conflict with *NetChoice* is likely to compel reversal.

*Second*, the Order plainly contradicts *Cinevision Corporation v. City of Burbank*, 745 F.2d 560 (9th Cir. 1984), a controlling decision the Order does not mention, let alone try to distinguish. The Ninth Circuit held in *Cinevision* that a concert promoter was engaged in expressive conduct when it staged a concert with multiple performers—essentially a speech compilation—even though the promoter "did not know specifically what songs each performer would sing." *Id.* at 568.  It "would be anomalous to require a promoter to know exactly what songs an entertainer will sing before any first amendment rights attach," the Court emphasized, "just as it would be to require a bookseller to read all of the books he plans to sell or a theater owner to view all of the movies he intends to show." *Id.*  The same analysis applies here:  it is anomalous—indeed, legally wrong under *Cinevision*—to require that an online platform's human employees view every video to ensure that it "fills in the blank" defined by the platform's message.  *See* TikTok Reply at 6-7; TikTok Sur-Sur-Reply at 2-5, ECF No. 94.  Yet that is precisely what the Order requires.

*Third*, the Order conflicts directly with *Moody*, which the Order seriously misconstrues. According to *Moody*, speech rights exist in a compilation *as a compilation*, which constitutes its own "single speech product" that reflects the publisher's private decisions about how to select the speech, how to arrange it, and whether to publish it.  *Moody*, 603 U.S. at 730-32.  The only potentially relevant question left open by *Moody* is whether its analysis applied to "feeds whose

algorithms respond *solely* to how users act online—giving them the content they appear to want, without any regard to independent content standards," *id.* at 736 n.5 (emphasis added), such as "content similar to posts with which the user previously engaged," *id.* at 746 (Barrett, J., concurring).  But that question is *not* raised here—TikTok's algorithm does not blindly recommend whatever videos a user would likely want, but instead implements many editorial judgments about the *kind* of videos TikTok wants to select and recommend from among the many videos likely to be interesting to the user, including videos with particular content TikTok wants to promote and videos with recent and unfamiliar content.  *See* Declaration of Joey Zhou ("Zhou Decl.") ¶¶ 7, 16-19, ECF No. 20-1; Supplemental Declaration of Joey Zhou ("Supp. Zhou Decl.") ¶¶ 4-15, ECF No. 68-1; Second Supplemental Declaration of Joey Zhou ("2d Supp. Zhou Decl.") ¶ 3, ECF No. 94-1. On the flip side, the algorithm is also written and managed to *avoid* recommending certain content, *even if* it is exactly what a user might want most of all.  The algorithm thus implements editorial judgments about excluding or disfavoring certain content inappropriate for teens, Zhou Decl. ¶ 18, and about avoiding the repetitive content ("rabbit holes") that Justice Barrett in *Moody* thought might reflect a non-expressive choice.  *See* Supp. Zhou Decl. ¶¶ 10, 13-15; Zhou Decl. ¶¶ 17, 19. The decision to avoid such content, despite a user's likely interest in it, is undeniably expressive, and nothing in *Moody* remotely suggests otherwise.  Indeed, nothing in *the Order* suggests otherwise either—it simply omits any mention of the expressive choices TikTok makes in curating its feeds so they identify the kind of "likely interesting" content that TikTok *wants* to convey.[1]

*Fourth*, the Order tries to distinguish *Hurley v. Irish-American Gay, Lesbian & Bisexual Group*, 515 U.S. 557 (1995)—on which *Moody* relies heavily—but its proffered distinction is

---

[1] Even if an online platform's feed actually was "merely a mirror that reflects back to users their own perceived interests," Order at 8—i.e., its algorithm did not include the platform's own judgments about quality, safety, and novelty in deciding what content to recommend—that hypothetical platform's feed would still constitute a curated set of "choices about what third-party speech to display and how to display it" and thus would be entitled to First Amendment protection. *Moody*, 603 U.S. at 716.

baseless. *Hurley* holds that a party responsible for "combining multifarious voices"—an online platform, for example—is entitled to First Amendment protection from laws that seek to regulate *how* the party combines those voices. 515 U.S. at 569. That protection derives from the "fundamental rule" of the First Amendment that the "speaker has the autonomy to choose the content of his own message." *Id.* at 573. The point of that rule, the Supreme Court emphasized, "is simply the point of all speech protection, which is to shield just those choices of content that in someone's eyes are misguided, or even hurtful." *Id.* at 574.

The Order seriously misconstrues *Hurley* and the rule of "speaker's autonomy" it applies. According to the Order, *Hurley* applies *only* to laws seeking to force a speech compiler to "*include*" in its compilation a message the compiler does "not wish to convey." Order at 14 (emphasis in original). That supposedly narrow rule does not apply here, the Order concludes, because "SB 976 does not require Plaintiffs to share a specific message on users' personalized feeds, nor does it impair their ability to exclude content that Plaintiffs find objectionable." *Id.* at 15. But *Hurley* on its face is *not* limited merely to laws that would force speech compilers to include speech they find objectionable. *Hurley*'s rule of "speaker's autonomy" is much more significant than that—such laws are invalid because they intrude on the speaker's broad autonomy to "choose the content of his own message," and to make *all* "choices of content" for *himself*, even if the state thinks them "misguided, or even hurtful." 515 U.S. at 573-74. SB 976 plainly violates that principle—the law explicitly seeks to prohibit TikTok from making its own "choices of content" to be included in its compilations.

*Fifth*, in asserting that an algorithmic recommendation feed categorically cannot ever be expressive because it inherently reduces to "number-crunching" and "predictive modelling," Order at 8, the Order even misconstrues the only support it affirmatively invokes for that proposition, Justice Alito's minority concurrence in *Moody*. In the passage cited in the Order (at 9-10), Justice Alito asserts that while online speech compilations *can* be expressive, they are non-expressive when they "serve as 'passive receptacle[s]' of third-party speech or as 'dumb pipes' that merely emit what they are fed." *Moody*, 603 U.S. at 782 (Alito, J. concurring) (citing *American Broadcasting Cos. v. Aereo, Inc.*, 573 U.S. 431, 458 (2014) (Scalia, J., dissenting)). The quoted observation from

Justice Scalia about "passive receptacles" and "dumb pipes," in turn, addresses a point about the evolution of cable companies that shows why such epithets do *not* apply to TikTok's heavily-curated compilations:

> Though cable systems started out essentially as dumb pipes that routed signals from point A to point B, by the 1970's, that kind of service no longer existed. At the time of our *Teleprompter* decision, cable companies performed the same functions as broadcasters by deliberately selecting and importing distant signals, originating programs, and selling commercials, thus making them curators of content—more akin to video-on-demand services than copy shops.

*American Broadcasting*, 573 U.S. at 458 (Scalia, J., dissenting) (cleaned up). In other words, a communications channel like a cable company is a non-expressive "dumb pipe" only when its operator exercises *no control whatsoever* over the content distributed through the channel, like a signal router or a copy shop. But when the operator performs the functions of a "broadcaster[]" by "deliberately selecting" which content to convey, it becomes a "curator[] of content" and the channel becomes expressive in itself. *Id.* at 459. Justice Scalia's insight was embodied in *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622 (1994), which held—in an opinion joined by Justice Scalia—that cable operators are entitled to First Amendment protection because they "engage in and transmit speech" by "exercising editorial discretion over which stations or programs to include," 512 U.S. at 636-37, even though they do not control or even know the specific content of shows the stations may air, and may even think them affirmatively objectionable.

As *Turner* and Justice Scalia's *American Broadcasting* opinion show, deliberately distinguishing among different speech content in deciding what to include and what to exclude—curating, in other words—is what defines a compilation as "expressive," rather than a "dumb pipe." Accordingly, applying the "dumb pipe" standard invoked by the Order actually supports enjoining SB 976's personalized feed provisions. Personalizing a compilation based on likely user interest is, of course, a form of curation, which should suffice to make it expressive. But the Order declares this one particular act of curation to be non-expressive, as a matter of law, merely because the publisher decides to curate based partly on likely user interest as predicted by algorithmic modelling. Equating that form of curation to a "dumb pipe" makes no sense—there is nothing "dumb" about a compilation generated by an algorithm managed by hundreds of intelligent

engineers who continually monitor and adjust the algorithm to ensure that it selects the kind of "likely interesting" content TikTok wants to select.  *See* Supp. Zhou Decl. ¶¶ 4-15; 2d Supp. Zhou Decl. ¶¶ 3-7; *supra* at 6-7.  No precedent holds or even suggests that a state may regulate such a heavily-curated speech compilation merely because it objects to the method of curation the publisher has chosen.  To the contrary, such "choices of content" are reserved solely to the publisher itself.  *Hurley*, 515 U.S. at 574.

Based on the Order's irreconcilable conflicts with the foregoing precedents, TikTok is likely to succeed on the merits of its appeal.

### B.   TikTok Will Face Irreparable Injury Absent An Injunction

As this Court has recognized, "the First Amendment issues raised by SB 976 are novel, difficult, and important." *NetChoice II*, 761 F. Supp. 3d at 1236.  If TikTok "is correct that SB 976 . . . violates the First Amendment," then it "will suffer great harm from the law's restriction of speech." *Id.*  Permitting enforcement of the challenged provisions, "even for minimal periods of time" while this appeal is resolved, will deprive TikTok of its First Amendment freedoms, thereby inflicting "irreparable injury." *Klein v. City of San Clemente*, 584 F.3d 1196, 1207-08 (9th Cir. 2009) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

As this Court already recognized, allowing the State to enforce the challenged provisions would also require TikTok to "make significant changes to [its] feeds," "fundamentally reorient[ing]" TikTok's "relationship with [its] users." *NetChoice II*, 761 F. Supp. 3d at 1236.  That reorientation may cause "loss of customer goodwill" resulting from the changes mandated by SB 976, and that loss of goodwill is not easily undone—a further form of irreparable injury.  *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1057-59 (9th Cir. 2009); *see Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("[I]ntangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm.").  TikTok also will need to invest significant monetary and human resources to alter its speech compilations—resources it will not be able to recover if SB 976 is ultimately invalidated.  *See Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304 (2010) (Scalia, J., in chambers) ("If expenditures cannot be recouped, the resulting loss may be irreparable.").

These irreparable injuries to TikTok's free-speech and financial interests strongly justify an injunction against enforcement of SB 976 pending appeal.

### C.    The Interests of Users, Creators, And The Broader Public In Avoiding A Wrongful Restriction Of Speech On These Important Communication Platforms Outweigh The State's Interest In Immediate Enforcement

The Ninth Circuit has "consistently recognized the significant public interest in upholding First Amendment principles." *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014). Acknowledging that point in *NetChoice II*, this Court observed that if the First Amendment objections to SB 976 are "correct," the "public interest would tip sharply in [Plaintiffs'] favor because there is a strong interest in maintaining a free flow of speech." 761 F. Supp. 3d at 1236. TikTok has at least "raised serious First Amendment questions," which "compels a finding that . . . the balance of hardships tips sharply in [its] favor." *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007) (cleaned up). Even if the Court disagrees on the ultimate resolution of those questions, the equities weigh in favor of injunction pending appeal where, as here, the "legal question raised is particularly important and 'serious questions going to the merits' have been raised." *NetChoice II*, 761 F. Supp. 3d at 1236 (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011)).

The interest in avoiding an erroneous restriction of TikTok's compilation and dissemination of speech does not inhere in TikTok alone—TikTok users, creators, and the broader public have a strong interest in access to such an important platform of expression and communication. As this Court recognized, platforms like TikTok are "among the most prominent places for people to connect with each other, exchange views, learn, and much more." Order at 1. Those platforms "have generated positive societal impacts," including "providing a way for people to connect and communicate" and "democratiz[ing] the type of information shared through [the] content creation process, allowing people from all walks of life to share their talents with the world on the internet." *Id.* at 2. Enforcement of SB 976's personalized feed provisions will deny the public those many benefits. Users will make fewer (if any) connections with new creators, new information, and new digital communities. Creators in turn will be constrained in their ability to "share their talents" with a broad new audience. Even worse, without feeds personalized based on likely user interest, many users—including teens—will be subject to more videos "they do *not* want to see." Petrocelli

Decl., Ex. X at 9, ECF No. 20-4 (opposition concerns) (emphasis added).  Scores of millions of videos are uploaded to the TikTok platform every single day.  Unless TikTok can personalize that content for its users, they are likely to be overwhelmed by useless and irrelevant information, and even content they affirmatively do not want to see, which would cause them not only practical irreparable harms, but also would violate their own First Amendment interests in accessing content in the form most relevant to them.  *See Stanley v. Georgia*, 394 U.S. 557, 564 (1969).

The State's interest in enforcing SB 976 during the appeal does not weigh strongly against the interests of TikTok, its users and creators, and the broader public interest in avoiding an erroneous restriction on access to this valuable means of communication.  The State thus far has not sought to enforce the statute while the courts address TikTok's constitutional challenge, and so TikTok has not previously needed the relief it seeks here.  To be sure, this Court has now provided the initial tier of judicial review and found that SB 976 is likely constitutional, but that determination remains preliminary, and TikTok's appeal presents an essential second layer of judicial scrutiny, just as the appeal in *NetChoice* did.  There is accordingly no greater reason for the State to initiate enforcement activity now than there has been to date.

## CONCLUSION

For the foregoing reasons, the motion for an injunction pending appeal should be granted.

PLS.' MOT. FOR INJUNCTION PENDING
APPEAL
Case No. 5:25-CV-9789-EJD

Dated: August 11, 2026                        Respectfully submitted,


By:    */s/ Daniel M. Petrocelli*
                    Daniel M. Petrocelli

DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, Suite 800
Los Angeles, California 90067-6035
Telephone:     +1 310 553 6700
Facsimile:     +1 310 246 6779

JONATHAN D. HACKER (*pro hac vice*)
jhacker@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC 20006
Telephone:     +1 202 383 5300
Facsimile:     +1 202 383 5414

*Attorneys for Plaintiffs TikTok Inc. and TikTok
USDS Joint Venture LLC*

PLS.' MOT. FOR INJUNCTION PENDING
APPEAL
Case No. 5:25-CV-9789-EJD