United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| META PLATFORMS, INC.,<br>Plaintiff,<br>v.<br>ROB BONTA,<br>Defendant. | Case No. 5:25-cv-09792-EJD<br>**ORDER DENYING MOTIONS FOR PRELIMINARY INJUNCTION PENDING APPEAL**<br>Re: ECF No. 131 |
| TIKTOK, INC.,<br>Plaintiff,<br>v.<br>ROB BONTA,<br>Defendant. | Case No. 5:25-cv-09789-EJD<br>**ORDER DENYING MOTIONS FOR PRELIMINARY INJUNCTION PENDING APPEAL**<br>Re: ECF No. 111 |
| GOOGLE LLC et al.,<br>Plaintiff,<br>v.<br>ROB BONTA,<br>Defendant. | Case No. 5:25-cv-09795-EJD<br>**ORDER DENYING MOTIONS FOR PRELIMINARY INJUNCTION PENDING APPEAL**<br>Re: ECF No. 109 |

Harm to minors from social media use has become part of the national conversation over the past several years. Relatively early in the conversation, California recognized the risks and dangers presented by certain components of social media. Weighing these risks against the

benefits that social media platforms offer, California saw fit to adopt Senate Bill 976, also known as the Protecting Our Kids from Social Media Addiction Act (the "Act" or "SB 976"). This Act regulates certain features of internet-based platforms, including "addictive feeds," as discussed more *infra*, but is not sweeping in its coverage. The Act does not ban social media access for children under a certain age, nor does it deprive parents of decision-making authority in determining what is best for the children when it comes to engaging with social media.

On August 5, 2026, the Court denied TikTok, Meta, and YouTube's (collectively, Plaintiffs) motions to preliminarily enjoin enforcement of Sections 27001(a), 27002(b)(2), and 27002(b)(4) (together, the "personalized feed provisions") of the Act. Order, ECF No. 126, Case No. 5:25-cv-09792-EJD ("Meta Docket"); ECF No. 106, Case No. 5:25-cv-09789-EJD ("TikTok Docket"), ECF No. 105, Case No. 5:25-cv-09795-EJD ("YouTube Docket"). The personalized feed provisions restrict Plaintiffs' ability to provide "addictive feeds" to minors in the absence of verifiable parental consent and require Plaintiffs to develop various settings that parents can use to control their kids' social media use. As defined, an "addictive feed" refers to "an internet website, online service, online application, or mobile application, or a portion thereof," where multiple pieces of media generated or shared by users are selected for display to a user based on information provided by or associated with the user or their device. Cal. Health & Safety Code § 27000.5. After receiving extensive briefing, including sur-sur replies from Plaintiffs in support of their motions, the Court declined to enjoin SB 976's personalized feed provisions. ECF No. 106.[1]

On August 11, 2026, Plaintiffs filed notices of appeal. ECF No. 110, TikTok Docket; ECF No. 130, Meta Docket; ECF No. 108; YouTube Docket. The same day, Plaintiffs moved for an injunction of the personalized feed provisions pending appeal of this Court's order pursuant to Federal Rule of Civil Procedure 62(b). TikTok Mot., ECF No. 111, TikTok Docket; Meta Mot., ECF No. 131, Meta Docket; YouTube Mot., ECF No. 109; YouTube Docket. "If this Court [did]

[1] The Court cites to the *TikTok Inc. v. Bonta* docket (No. 5:25-cv-09789-EJD) for briefing and documents filed in all three of the above-captioned matters. To the extent a document was filed in only one of the actions, the Court will specify the relevant docket.

United States District Court
Northern District of California

not rule before close of business on August 18, 2026," Plaintiffs intended to move for an injunction pending appeal in the Ninth Circuit. TikTok Mot. 1. The Court directed Defendant Rob Bonta ("Bonta") to file a response by 12:00 p.m. PT on August 14, 2026, and informed the Parties of the Court's intention to issue a ruling by August 21, 2026. Bonta filed his response opposing Plaintiffs' motion. ECF No. 114. The Court has authority to issue an injunction pending appeal despite its denial of preliminary injunctive relief pursuant to Federal Rule of Civil Procedure 62(c). *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, No. 15-CV-03415-EMC, 2016 WL 9184999, at *1 (N.D. Cal. June 7, 2016).

## I. LEGAL STANDARD

Though not identical, "the standard for evaluating an injunction pending appeal is similar to that employed" in deciding whether to grant a preliminary injunction. *S. Bay United Pentecostal Church v. Newsom*, 959 F.3d 938, 939 (9th Cir. 2020) (quoting *Feldman v. Ariz. Sec'y of State's Office*, 843 F.3d 366, 367 (9th Cir. 2016)). Courts consider whether the moving party has demonstrated that they are likely to succeed on the merits, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest. *Id.* The application of this four-part standard is somewhat more flexible when employed to evaluate whether to grant an injunction pending appeal. *NetChoice v. Bonta*, 761 F. Supp. 3d 1232, 1235 (N.D. Cal. Jan. 2, 2025) ("*NetChoice II*") (citing *MediNatura, Inc. v. Food & Drug Admin.*, No. 20-cv-2066, 2021 WL 1025835, at *6 (D.D.C. Mar. 16, 2021)). Additionally, courts in the Ninth Circuit may apply the "serious questions" test, a "sliding scale" version of the test established in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024). Under this test, "a party is entitled to a preliminary injunction if it shows" (1) "serious questions going to the merits," (2) "a likelihood of irreparable injury," (3) "a balance of hardships that tips sharply towards the plaintiff," and (4) "the injunction is in the public interest." *Id.* (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). The balance of equities and public interest merge when the party opposing

United States District Court
Northern District of California

injunctive relief is the government. *See California Chamber of Com. v. Council of Educ. & Rsch. on Toxics*, 29 F.4th 468, 482 (9th Cir. 2022). As this Court previously noted, a court may issue an injunction pending appeal even where it believes its analysis in denying preliminary injunctive relief is correct when "the trial court is charting a new and unexplored ground by rul[ing] on an admittedly difficult legal question[,] and when the equities of the case suggest that the status quo should be maintained." *NetChoice II*, 761 F. Supp. 3d 1235–36 (quoting *Protect Our Water v. Flowers*, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004)) (internal quotation marks omitted, alterations in original).

## II. DISCUSSION

The circumstances surrounding Plaintiffs' motions for preliminary injunction pending appeal are meaningfully different from those surrounding NetChoice's motion seeking the same relief in *NetChoice II* more than a year and a half ago. Although each Plaintiff suggests that an injunction pending appeal is appropriate for the same reasons as in *NetChoice II*, their motions highlight important differences in both the legal landscape and the current record. For example, YouTube notes that this Court now benefits from a "detailed factual record," but in *NetChoice I*, the case involved "expedited briefing and arguments from the parties." YouTube Mot. 2; Def.'s Opp'n 1, ECF No. 114 (citing *NetChoice II*, 761 F. Supp. 3d at 1234); *see also* TikTok Mot. 5 ("TikTok has now provided the platform-specific evidence mandated by *NetChoice I* and *III*.") The Parties likewise reference the Ninth Circuit's decision in *NetChoice, LLC v. Bonta*. *NetChoice, LLC v. Bonta*, 152 F.4th 1002 (9th Cir. 2025) ("*NetChoice III*"). At the time that the Court granted the previous request for preliminary injunction pending appeal, the Court did not yet have the benefit of appellate review. *See NetChoice II*, 761 F. Supp. 3d at 1236. The Circuit's subsequent decision provided guidance in analyzing requests for preliminary injunctions relating to SB 976.

The Court is not otherwise persuaded that Plaintiffs are likely to succeed on the merits of their appeal. Plaintiffs reiterate the same arguments that the Court previously considered before concluding that a decision to show users content that a predictive algorithm suggests will be

United States District Court
Northern District of California

"interesting" to them is non-expressive, and therefore not protected by the First Amendment. *See* Order 8.[2] As Bonta points out, the Court considered "substantial evidence put forward by each Plaintiff," including multiple rounds of supplemental briefing and supportive declarations, as well as "oral argument for more than five hours." Def.'s Opp'n 3; *see also id.* at 5 (collecting Plaintiffs' descriptions of how they characterize their personalized feed decisions).

Plaintiffs have not shown that they will suffer irreparable harm by complying with the personalized feed provisions of SB 976 while the Ninth Circuit considers their appeals. Plaintiffs primarily rely on the harm faced from the "loss of First Amendment freedoms" which "unquestionably constitutes irreparable injury." Meta Mot. 7 (quoting *NetChoice III*, 152 F.4th at 1024); *see also* YouTube Mot. 14. As this Court previously noted, great harm is suffered when a law restricts speech. *Bonta II*, 761 F.Supp.3d at 1236. But here, where the Court has found that the personalized feed provisions do not restrict First Amendment freedoms, the Court is unpersuaded by this asserted risk of irreparable injury. For the same reason, YouTube's argument that its free-speech rights are potentially chilled by the threat of enforcement is unconvincing. *See* YouTube Mot. 15 (citing *Cuviello v. City of Vallejo*, 944 F.3d 816, 832–33 (9th Cir. 2019)).

Plaintiffs overstate the impacts of the personalized feed provisions in asserting irreparable injury. YouTube argues that "content creators . . . will be unable to reach their intended audiences," and that "minor users will be irreparably harmed by the inability to view compilations specifically identifying, among the billions of videos on YouTube, the content that is most likely

[2] Plaintiffs note that the Court did not "mention, let alone try to distinguish" *Cinevision Corporation v. City of Burbank*, 745 F.2d 560 (9th Cir. 1984). Tik Tok Mot. 6. The Court need not explicitly examine every case that it finds inapposite. Having found that personalized feeds merely reflect back to users their revealed preferences and are therefore not expressive, the Court's decision did not hinge on the fact that Plaintiffs did not know specifically what content would be shown by the recommender system. *See* Order at 8 (a decision to rely on users' characteristics and history on platforms to reflect back to them their own perceived interests is not an expressive message). Nothing in the Court's Order requires that "an online platform's human employees view every video to ensure that it 'fills the blank' defined by the platform's message," as at least one Plaintiff suggests. *See* TikTok Mot. 6. Further, *Cinevision* stands for the proposition that "theater owners and booksellers, even if they are not 'expressing' themselves, further a first amendment interest in making protected materials available to the public" and act as a type of clearinghouse for expression. *Cinevision*, 745 F.2d at 568. SB 976 does not impair platforms' ability to host third-party content.

to be enriching, valuable, and age-appropriate for them." YouTube Mot. 14–15. SB 976's personalized feed provisions include a carve-out for minor users to request specific creators' media, and the "prioritization" of such media. § 27000.5(a)(4). Meta likewise suggests that it will suffer great harm given that "billions of people globally use [its] services to share ideas." Meta Mot. 7. But SB 976 does not limit these "billions of people" from continuing to share their ideas on the platform. *See also* TikTok Mot. 11 ("Enforcement of SB 976's personalized feed provisions will deny the public" a way to connect and communicate.). Similarly, Plaintiffs raise concerns about the "substantial compliance burdens" required to fundamentally restructure their platforms, including the significant monetary resources necessary. YouTube Mot. 15; Meta Mot. 7 ; TikTok Mot. 10. Here, the costs are more akin to ordinary compliance costs, which do not typically constitute irreparable harm. *Council for Responsible Nutrition v. James*, 159 F.4th 155, 171 (2d Cir. 2025); *see also Am. Hosp. Ass'n v. Harris*, 625 F.2d 1328, 1331 (7th Cir. 1980) ("injury resulting from attempted compliance with government regulation ordinarily is not irreparable harm"); *Novedades Y Servicios, Inc. v. Fin. Crimes Enf't Network*, 181 F.4th 961, 977 (9th Cir. 2026) (monetary injury is not normally considered irreparable).

Plaintiffs similarly suggest that, because personalized feeds are a central part of their platforms, they will need to create an entirely new product that may be unappealing to users, resulting in a loss of customer goodwill. *See* YouTube Mot. 16; TikTok Mot. 10; Meta Mot. 7. Much like the potential compliance costs, this risk appears purely speculative. *See Goldie's Bookstore, Inc. v. Super. Ct.*, 739 F.2d 466, 472 (9th Cir. 1984); *see also Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009) ("A motor carrier can refuse to sign the likely unconstitutional Concession agreements, and what will ensue, according to the record, is at the very least a loss of customer goodwill—or, indeed, of the carrier's whole drayage business . . . That goodwill would evaporate does not appear speculative at all."). Speculative injury "does not constitute irreparable injury." *Goldie's Bookstore*, 739 F.2d at 472.

Finally, the balance of equities and public interest weigh against an injunction pending appeal. Plaintiffs rely heavily on this Court's prior observations in *NetChoice II*, but as explained,

the legal landscape has evolved since January 2025, and the record upon which the Court now relies is substantial. *See* TikTok Mot. 11 (citing *NetChoice II*); Meta Mot. 8 (same); YouTube Mot. 16 (same). Plaintiffs otherwise suggest that the public will be denied the benefits of Plaintiffs' platforms: "providing a way for people to connect and communicate" and "allowing people from all walks of life to share their talents with the world on the internet." TikTok Mot. 11; *see also* YouTube Mot. 16. SB 976's personalized feed provisions are not so sweeping. The provisions do not restrict direct messaging, nor do they restrict creators' ability to record and upload content. Rather, the personalized feed provisions were adopted by the State to protect the mental and physical health of children, an extremely important justification and one often found compelling by courts.[3] *NetChoice v. Bonta*, 761 F. Supp. 3d 1202, 1227 (N.D. Cal. 2024), *aff'd in part, rev'd in part and remanded sub nom. NetChoice, LLC v. Bonta*, 152 F.4th 1002 (9th Cir. 2025) (citing *Denver Area Educ. Telecomms.*, 518 U.S. 727, 743 (1996)). As set forth in the U.S. Surgeon General's Advisory, cited by the Act, problematic and addictive social media use has been linked to depression, anxiety, and eating disorders, among other negative health outcomes. Opp'n to Mots. for Preliminary Inj. 22, ECF No. 45. And "algorithmic designs" can promote extreme, inappropriate, and harmful content to children and adolescents. Sokolsky Decl. in Support of Opp'n, Ex. 15 at 8, ECF No. 114-1.

Further, "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 148 F.4th 648, 656 (9th Cir. 2025) (citing *Trump v. CASA, Inc.*, 606 U.S. 831 (2025)). Enjoining the Act's personalized feed provisions pending appeal would undercut the State's significant interest in protecting minors' mental and physical health, and otherwise cause injury insofar as it would prevent the State from effectuating statutes enacted by its residents' representatives.

[3] Here, where the Court has found Plaintiffs' attempts to characterize their message as "expressive" unpersuasive such that the personalized feed provisions do not restrict Plaintiffs' First Amendment rights, whether courts might categorize this as a compelling interest does not make a meaningful difference for the present analysis.

For these reasons, the Court **DENIES** Plaintiffs' motions for an injunction of SB 976's personalized feed provisions pending appeal.

**IT IS SO ORDERED.**

Dated: August 21, 2026

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California